# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**MARY S. CARDELL,**
    **Plaintiff,**

**v.**                             **Case No. 3:11cv359/MCR/CJK**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
    **Defendant.**

---

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b), and NORTHERN DISTRICT OF FLORIDA LOCAL RULES 72.1(A), 72.2(D), and 72.3, relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. §§ 401-1400v. The case is now before the court pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying claimant's applications for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401-34, and for supplemental security income under Title XVI, 42 U.S.C. §§ 1381-83.

Upon review of the record before this court, I conclude that the findings of fact and determinations of the Commissioner are supported by substantial evidence. The decision of the Commissioner, therefore, should be affirmed, and the applications for disability insurance benefits and supplemental security income denied.

## PROCEDURAL HISTORY

On May 18, 2007, Mary S. Cardell (who will be referred to by name, as plaintiff, or as claimant) protectively filed applications for disability insurance benefits and supplemental security income, alleging disability beginning July 17, 2006.  T. 18.[1]  The applications were denied initially and upon reconsideration.  T. 57-64, 68-70.  Claimant filed a written request for hearing, which was held before an administrative law judge ("ALJ") on May 4, 2009.  T. 26-56.  In a decision dated July 24, 2009, the ALJ denied claimant's applications for disability insurance benefits and supplemental security income, finding that she had not been under a disability within the meaning of the Social Security Act at any time from the alleged onset date through the date of decision.  T. 13-25.  The Appeals Council of the Social Security Administration denied plaintiff's request for review on May 25, 2011, rendering the ALJ's decision the final decision of the Commissioner.  T. 1-6.  In the present action for review of the Commissioner's decision, Ms. Cardell raises one issue, asserting that the decision is not supported by substantial evidence because, she contends, the ALJ did not properly evaluate plaintiff's complaints of pain and other subjective symptoms.  (Doc. 9, p. 3).

## FINDINGS OF THE ALJ

In the written decision the ALJ made a number of findings relative to the issue raised in this appeal:

---

[1] The administrative record, as filed by the Commissioner, consists of nine volumes (docs. 4-2 through 4-10), and has 536 consecutively numbered pages.  References to the record will be by "T." for transcript, followed by the page number.

1.  Claimant meets the insured status requirements of the Social Security Act through March 31, 2010.

2.  Claimant has not engaged in substantial gainful activity since July 17, 2006, the alleged onset date.

3.  Claimant has the following severe impairments:  traumatic brain injury, carpal tunnel syndrome, and muscle spasm in the back.

4.  Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.  Claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), in that she can frequently lift and/or carry ten pounds, occasionally lift and/or carry twenty pounds, sit for six hours in an eight-hour workday with normal breaks, and stand/walk for six hours in an eight-hour workday with normal breaks, subject to the exception that claimant cannot climb ladders, ropes, or scaffolds, but can occasionally balance and occasionally handle with the left upper extremity.  Claimant additionally possesses the mental residual functional capacity to understand, remember, and carry out simple, routine, and repetitive tasks.

6.  Claimant is capable of performing the physical and mental requirements of her past relevant work as a deli worker, cashier, and checker, as generally performed pursuant to the Dictionary of Occupational Titles.  This work does not require the performance of work-related activities precluded by claimant's residual functional capacity.

7.  Claimant has not been under a disability, as defined in the Social Security Act, from July 17, 2006, through the date of decision.  T. 18-25.

## STANDARD OF REVIEW

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied by the ALJ.  *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  With reference to other standards of review, the Eleventh Circuit has said, "'Substantial evidence is more than a scintilla . . . .'"  *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (*quoting Lewis*, 125 F.3d at1439).  Although the ALJ's decision need not be supported by a preponderance of the evidence, "it cannot stand with a 'mere scintilla' of support."  *See Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).  The reviewing court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner] . . . .'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Nevertheless, a reviewing court may not look "only to those parts

of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  In sum, review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record."[2]  *See Flynn v. Heckler*, 768 F.2d. 1273, 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 2:10–cv–725–FtM–29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011). The recitation of medical and historical facts of this case, as set out below, is based upon my independent review.

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

---

[2] The Eleventh Circuit speaks not only of independent review of the administrative record, but reminds us it conducts *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision.  *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

2.   If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.  If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.   If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.   Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. *See* 20 C.F.R. § 404.1512.  The Eleventh Circuit has explained the operation of step five:

> In practice, the burden temporarily shifts at step five to the Commissioner. *See Jones*, 190 F.3d at 1228.  The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. *See id.*  In order to be considered disabled, the claimant must then prove that [she] is unable to perform the jobs that the Commissioner lists. *See id.*  The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations. *See Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987) ("The shifting of the burden of proof is not statutory, but is a long-standing judicial gloss on the Social Security Act")).

*Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

Step five (or step four in cases where the ALJ decides a claimant can perform her past work) is where the rubber meets the road.  At that point, the ALJ formulates the all-important residual functional capacity.  Even where one or more severe impairments are established, the claimant must show that she cannot perform work within that residual functional capacity.  The ALJ establishes residual functional capacity, utilizing the impairments identified at step two, by interpretation of (1) the medical evidence, and (2) the claimant's subjective complaints (generally complaints of pain).  Residual functional capacity is then used by the ALJ to make the ultimate vocational determination required at step five.[3]  "[R]esidual functional capacity is the most [claimant] can still do despite [her] limitations."[4]  20 C.F.R. § 404.1545(1).

---

[3] "Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.)  We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."  20 C.F.R. § 404.1520(a)(4).

[4] In addition to this rather terse definition of residual functional capacity, the Regulations describe how the Commissioner makes the assessment:

> (3) Evidence we use to assess your residual functional capacity.  We will assess your residual functional capacity based on all of the relevant medical and other evidence.  In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity.  (See § 404.1512(c).)  However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources.  (See §§ 404.1512(d) through (f).)  We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. (See § 404.1513.)  We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.  (See paragraph (e) of this section and § 404.1529.)[.]

Often both the medical evidence and the accuracy of a claimant's subjective complaints are subject to a degree of conflict, and that conflict leads, as in this case, to the points raised on judicial review by many disappointed claimants.

## FACT BACKGROUND AND MEDICAL HISTORY[5]

Plaintiff was born on January 12, 1979, making her twenty-seven years old on the alleged onset date. Ms. Cardell is able to communicate in English and completed the twelfth grade, but does not have a high school diploma or GED.  T. 30-31. Alleging disability beginning July 17, 2006, plaintiff cites a history of traumatic brain injury, carpal tunnel syndrome ("CTS"), and chronic back pain.  (Doc. 9, pp. 2-3). Claimant reported past work experience as a supermarket deli employee.  T. 31-32.

The chronology of relevant medical history begins in May 1997, when plaintiff was involved in a motor vehicle accident, resulting in coma and brain damage.  T. 17. Complaining of pain and tingling in her left middle finger, Ms. Cardell was seen at the Baptist Health Care Emergency Room on October 22, 2006.  T. 198-202, 400-04. X-rays of the hand returned negative and claimant was given a splint for the affected finger.  T. 201, 403.  Plaintiff returned to the emergency room on December 27, 2006, presenting with pain in the third and fourth fingers of the left hand.  T. 209-11. Again, x-rays were normal.  T. 211.

On January 5, 2007, Ms. Cardell arrived at Family Medicine Associates of the Gulf Coast with pain in her left arm, which she stated occurred after restraining her son during tantrums.  T. 271-74.  Dr. Pamela J. Svendsen, M.D., conducted a physical

---

20 C.F.R. § 404.1545(a)(3).

[5] Although intended to be thorough, and to provide an overview of claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as called for in the Analysis section.

examination, finding nothing abnormal.  T. 273-74.  Complaining of pain in her wrists and numbness in both hands, plaintiff saw Dr. Robert P. Jensen, M.D., on referral from Dr. Steven C. Kronlage, M.D., at Pensacola Physical Medicine and Rehabilitation Electrodiagnostic Lab on January 31, 2007.  T. 217-21.  Dr. Jensen observed normal upper arm strength and finger abduction, and positive wrist carpal tunnel compression in both wrists.  T. 217.  Dr. Jensen diagnosed moderate-severe left CTS (with active axonal loss) and moderate right CTS (without active axonal loss).  T. 219.  Consequently, Dr. Kronlage performed carpal tunnel release surgery on the left hand on February 19, 2007.  T. 222-30.

Ms. Cardell returned to Dr. Kronlage for a follow-up on March 1, 2007.  T. 253.  Claimant reported significant improvement in the left wrist, but was experiencing some wound breakdown attributable to smoking. T. 253.  Plaintiff saw Dr. Kronlage again on March 31, 2007, when she stated that she was doing "very well" and that her left wrist felt "much better."  T. 252.  On April 11, 2007, Dr. Kronlage performed a carpal tunnel release procedure on the right hand.  T. 232-43.  One month later, Ms. Cardell returned with complaints of a "knot" in her wrist.  T. 249.  Dr. Kronlage detected some post-surgical scar tissue and recommended deep tissue massage. T. 249.  On May 31, 2007, claimant saw Dr. Kronlage again and said that her hands were "doing great."  T. 248.  Opining that plaintiff would have "no limits on activity," Dr. Kronlage observed "excellent" strength in both hands and could identify no evidence of repeat CTS.  T. 248.

Ms. Cardell returned to the emergency room on June 3, 2007, complaining of back pain and spasms in her left shoulder.  T. 257, 389.  An MRI of the shoulder was unremarkable, and claimant refused physical therapy.  T. 257, 260.  On July 27, 2007,

plaintiff saw Dr. Svendsen, who noted sacroiliac joint tenderness and prescribed pain medication.  T. 281-82, 435-37.  On August 1, 2007, Ms. Cardell saw Andi Nelson, P.T., at Baptist First Rehab ("First Rehab") regarding her back pain.  T. 406-10. Claimant asserted that her back pain commenced after the May 1997 car accident. T. 406.  Upon examination, Nelson noted that plaintiff walked slowly and with an antalgic gait.  T. 407.  Pain prevented Ms. Cardell from performing various tests, including a range of motion assessment.  T. 407.  Nelson assessed sacroiliac sprain and recommended aquatic rehabilitation therapy and home exercise.  T. 406-07, 409.

Claimant returned to First Rehab the following day for her first physical therapy appointment, but stopped the session due to back cramps.  T. 411-12. Amanda Terry, P.T.A., recommended that plaintiff continue physical therapy and attempt increased activity during her next visit.  T. 412.  Nonetheless, Ms. Cardell cancelled her appointments on August 7, 14, 16, and 30, 2007.  T. 413-16.  Claimant was reevaluated at First Rehab on September 4, 2007, when she explained that vertigo had prevented her from attending physical therapy for the preceding month. T. 417, 438.  Plaintiff said that her back pain had improved with aquatic therapy to the point that she was able to lift her son, but also stated that the pain had increased since stopping therapy.  T. 417, 438.  Ms. Cardell cancelled additional physical therapy appointments on September 6, and 11, 2007.  T. 421-22.

Complaining of pain in her left leg, claimant attended physical therapy on September 13, 2007, and stated that she had been hit by a tire swing.  T. 423.  After twenty-five minutes of aquatic therapy, plaintiff ended the session due to pain.  T. 424.  On September 20, 2007, Ms. Cardell resumed physical therapy and noted pain after her previous session.  T. 425.  Claimant complained of back pain during twenty-

five minutes of aquatic therapy.   T. 426.   Plaintiff cancelled physical therapy appointments scheduled for September 21, and 25, 2007, and has not returned to physical therapy since.  T. 427-29.  On September 29, 2007, Ms. Cardell went to the emergency room with back, shoulder, and neck pain.  T. 369.  Claimant said the pain had persisted for the preceding two days.  T. 370.

Dr. John Duffy, Ph.D., performed a consultative psychological examination on October 23, 2007.  T. 294-96.  Plaintiff asserted that she quit her deli job, which she worked from November 2006 through January 2007, because she was struggling with the lifting and standing requirements.  T. 294.  On a typical day, Ms. Cardell stated, she prepared her five-year-old daughter for school, made breakfast, and walked her daughter to the bus stop.  T. 295.  Claimant also reported that she cared for her three-year-old son and watched her sister-in-law's children on occasion.  T. 295.  Further, plaintiff relayed that she prepared meals, but did so slowly due to physical limitations. T. 295.  Dr. Duffy found Ms. Cardell's immediate attention to be significantly below average, but characterized her memory and insight as fair.  T. 295.  Dr. Duffy opined that plaintiff, who scored a sixty-three on the GAF (Global Assessment of Functioning) scale, is of low average intelligence and has a limited fund of knowledge.  T. 295-96.

On December 15, 2007, Ms. Cardell presented at the emergency room with swelling and soreness under her left palm.  T. 344.  Claimant was diagnosed with a ganglion cyst, a condition for which she returned to the ER on March 5, 2008.  T. 345, 330.  Dr. Darrell Pugh, M.D., examined plaintiff on April 2, 2008, when she complained of low back pain and neuropathy of the right leg.  T. 488.  An MRI of the hip showed no abnormality, and images of plaintiff's lumbar spine revealed only

"minor degenerative changes."  T. 501-02.  On April 30, 2008, Ms. Cardell returned to Dr. Pugh with pain in the low back and right hip, in addition to weakness in the right arm and leg.  T. 487.  Dr. Pugh noted tenderness in the lumbar area during claimant's subsequent visit, at which time she complained of continued back pain, as well as fatigue.  T. 486.

On November 22, 2008, plaintiff again went to the emergency room, where she reported muscle cramping and pain in the hip and pelvis.  T. 456.  Ms. Cardell said she felt that her hip was going to "give out."  T. 456.  Nevertheless, a physical examination was normal and claimant was observed walking to the nurse's station on several occasions without apparent difficulty.  T. 457-58.  Plaintiff was diagnosed with muscle spasms and instructed to see her general practitioner.  T. 459.  Ms. Cardell returned to Dr. Pugh on November 26, 2008, when she complained of weakness and shaking in her right leg.  T. 483.  Claimant also reported chronic low back pain. T. 483.  Upon examination, Dr. Pugh observed tenderness in the low back, but an MRI revealed a "stable" lumbar spine with no acute osseous abnormality.  T. 483, 497.  Another MRI of plaintiff's lumbar spine, taken December 2, 2008, showed "minimal" disc dessication at L4-5 and right paracentral disc protrusion, but no spinal stenosis.  T. 496.  Lumbar alignment was normal with no compression deformities or subluxations.  T. 496.

The ALJ issued an adverse determination in this case on July 24, 2009, after which time Ms. Cardell submitted additional medical records, from June 3, 2009, to January 1, 2011, indicating that she continued to seek treatment for back pain and other alleged impairments.  T. 506-36.  For instance, claimant saw Dr. Kronlage on July 9, 2009, when she arrived with pain in her left wrist.  T. 536.  Dr. Kronlage

diagnosed another ganglion cyst, aspirating and injecting it with dexamethasone.  T. 536.  On August 29, 2009, Dr. Pugh ordered an AMP US of the pelvis, which showed no sonographic abnormality.  T. 532.  Plaintiff returned to the emergency room on October 26, 2009, complaining of pain in the low, middle, and upper back.  T. 506. Upon claimant's reports of limb pain in November 2009, Dr. Pugh ordered an AMP three-view of the left ring finger, which returned negative.  T. 531.  An MRI of the lumbar spine, performed February 15, 2010, showed "very minimal disc bulging at L4-5 similar to the prior study of 2008."  T. 530.  The right paracentral mixed protrusion at T11-12 also proved unchanged in the interim.  T. 530.  An AMP three-view of the right foot, ordered by Dr. Pugh, revealed no acute or advanced degenerative changes as of October 12, 2010.  T. 527.  On October 29, 2010, Dr. Pugh ordered a sonographic examination of the right lower extremity, which showed no evidence of deep vein thrombosis.  T. 528.

<u>HEARING BEFORE THE ALJ</u>

The administrative hearing commenced on May 4, 2009, with the testimony of Ms. Cardell, who said that she completed the twelfth grade, but did not receive a diploma because injuries from the car accident prevented her from attending summer school to earn the necessary credits.  T. 30-31.  Claimant was employed as a cashier and stocking clerk at Walgreens and Lowe's from 2002 to 2004, T. 47, but last worked, part-time, at a supermarket deli in 2007, quitting because she could not meet the physical demands of the job (i.e. carrying, holding, lifting).  T. 31-32, 40-42. Plaintiff agreed that the carpal tunnel release procedures, performed on both hands, were helpful.  T. 33.  According to Ms. Cardell, Dr. Pugh wanted to defer surgery on her left wrist, because he feared she could lose the use of her index finger.  T. 34.

Claimant testified that shakiness in her right arm, a cyst on her left wrist, back spasms, an inability to stand for extended periods, and balance problems prevented her from working.  T. 33.  In particular, plaintiff has difficulty holding and carrying things.  T. 36-37, 41-42.  Generally speaking, Ms. Cardell experiences pain in her right side and left arm, which prevented her from lifting even her newborn children. T. 43-44.  On a scale of zero to ten, claimant pinned her pain at a six or seven on an average day.  T. 44.  In addition, plaintiff attributed short- and long-term memory problems to the head trauma sustained in 1997.  T. 37.  Ms. Cardell reported that she was not taking any prescription pain medication on an ongoing basis, but had taken steroids on a temporary basis in the past to treat her back.  T. 35.  Further, claimant testified that muscle relaxers "dull the pain enough to where [she] can stand it . . . ." T. 45.

Claimant stated that she can stand forty-five minutes to one hour at a time and sit thirty to forty-five minutes at a time, but cannot lift her fifty-pound son.  T. 35-36. Plaintiff asserted that the pain requires her to lay down between one and three times per day, for at least an hour.  T. 45.  With help from her mother, plaintiff explained, she cares for her four-year-old son during the day.  T. 36.  Regarding her activities of daily living, Ms. Cardell testified that she does laundry, hangs clothes, performs yard work, shops for groceries (again, with help from her mother), and drives a car.  T. 31, 36-38.

Upon the conclusion of counsel's questioning, the ALJ received testimony from Gail Jarrell, a vocational expert.  T. 48.  Given the residual functional capacity articulated in Exhibit 17F, compiled by the state's Disability Determination Services, the ALJ inquired of Ms. Jarrell whether plaintiff could perform her past work:

> Please assume an individual of claimant's younger age, limited education, past work experience as you have summarized.  She has a residual functional capacity as described by the DDS [Disability Determination Services] in exhibit 17F, specifically an ability to lift up to 25 pounds frequently and 50 pounds occasionally, to sit and stand or walk about six hours each in an eight hour day.  From a mental standpoint, the individual has mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace with no . . . episodes [of decompensation], translating into the mental residual functional capacity to understand, remember and carry out simple repetitive tasks.  Could such an individual perform the claimant's past work?

T. 50.  Ms. Jarrell replied that plaintiff could perform her past work as a deli worker and cashier checker (retail trade), both as they are generally performed and as performed by Ms. Cardell.  T. 49, 50-51.

Relying on a more limited residual functional capacity, the ALJ advanced a second hypothetical:

> [P]lease assume an individual of claimant's younger age, limited education, past work experience who has the residual functional capacity to lift up to 10 pounds frequently and 20 pounds occasionally, to sit and stand or walk about six hours each in an eight hour day with normal breaks, the individual should only occasionally balance and never climb ladders, ropes or scaffolds.  And occasionally but not frequently handle the left upper extremity.  The individual has the mental residual functional capacity to understand, remember and carry out simple repetitive tasks.  Could such an individual perform the claimant's past work?

T. 51-52.  Given this profile, the vocational expert answered that claimant could perform her past work as a deli worker both as it is generally performed and as she

performed it (at the light level), but could only perform her past work as a cashier checker as it is generally performed, at the light level.[6]  Jarrell also stated that there are other jobs an individual with such restrictions could perform, including cleaner, housekeeper, hotel maid, car wash attendant, and general office clerk.  T. 52-53.

Finally, claimant's attorney posed a hypothetical of his own compilation, asking the expert whether an individual with certain additional limitations could perform claimant's past work:

> I'd like you to consider a hypothetical individual with the same age, limited education and vocational background as the claimant. . . . I want to assume that the claimant's testimony today is fully credible with respect to her exertional and non-exertional impairments.  And those would include but are not limited to:  the inability or limited ability to engage in activities of daily living where she does not engage in such activities at least 75 percent of the day, the need to take -- or lie down one to three times a day for . . . one to four hour periods, limited fine and gross . . . manipulation in each hand and limited [bi] manual . . . dexterity.  Could such an individual perform the claimant's prior work?

T. 54.  Ms. Jarrell responded, "No, no one . . . would be able to engage in gainful employment lying down one to four hours a day.  That would eliminate all employment."  T. 55.

## ANALYSIS

Claimant raises one issue in this appeal, arguing that the administrative decision is not supported by substantial evidence, because, she contends, the ALJ did not properly evaluate her pain and other subjective symptoms.  (Doc. 9, p. 3).  Citing

---

[6] Earlier during the hearing, Ms. Jarrell testified that plaintiff performed her work as a cashier checker at the medium level, which level of work, according to Jarrell, would not be accommodated by the residual functional capacity formulated in the hypothetical preceding this response.  T. 50, 52.

the December 2, 2008, MRI of her lumbar spine, plaintiff maintains that her "subjective pain testimony is well supported by objective medical evidence." (Doc. 9, p. 5). Focusing solely on the pain and muscle spasms she experiences in her low back, Ms. Cardell concludes that she has established disability pursuant to the Eleventh Circuit's pain standard and thus that the ALJ should have found her disabled.[7] (Doc. 9, pp. 5-6).

Indeed, the ALJ in this case issued negative credibility findings on the questions of alleged pain, symptomatology, and loss of functional capacity, in light of which the court must now make a familiar inquiry. Under controlling law, pain is treated, for purposes of the disability analysis, as a symptom of disability. The Commissioner will not find disability based on symptoms, including pain alone, unless "medical signs and laboratory findings . . . show . . . a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged . . . ." *See* 20 C.F.R. §§ 404.1529 and 416.929; *see also Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) ("A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."). The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand* test[8]:

---

[7] Though the ALJ determined that claimant's severe impairments also include traumatic brain injury and carpal tunnel syndrome, claimant does not advance any argument in her memorandum relating to these other impairments. Nor does claimant raise the issue of her mental residual functional capacity, to which the ALJ gave thorough treatment in the administrative decision. T. 19-20, 21-22.

[8] *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir. 1986) (adopting the three-part pain standard in the Eleventh Circuit).

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing:  (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson*, 284 F.3d at 1225.  "The standard also applies to complaints of subjective conditions other than pain."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

Failure to cite or refer to the language of the pain test is not reversible error where the ALJ cites to 20 C.F.R. § 404.1529, "which contains the same language regarding the subjective pain testimony that [the Eleventh Circuit] interpreted when initially establishing its three-part pain standard."  *See Wilson*, 284 F.3d at 1226.  It is within the ALJ's discretion to determine that a plaintiff's claims of pain and other symptoms are not credible.  *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence."); *Holt*, 921 F.2d at 1223.  "But the ALJ's discretionary power to determine the credibility of testimony is limited by [her] obligation to place on the record explicit and adequate reasons for rejecting that testimony."  *Id.*; *see Marbury*, 957 F.2d at 839 ("If the ALJ refused to credit subjective pain testimony where such testimony is critical, [she] must articulate specific reasons for questioning the claimant's credibility.").

The record is not lacking in plaintiff's complaints of low back pain, spasms, and related subjective symptoms.  Ms. Cardell was seen at the emergency room complaining of discomfort in the lumbar region on no fewer than three occasions

between June 2007 and October 2009.  T. 257, 389, 369, 506.  Having been diagnosed with a sacroiliac sprain, claimant intermittently attended physical therapy sessions from August 1, 2007, to September 20, 2007, and, according to the pertinent treatment notes, even ended some of those sessions prematurely after reports of pain. T. 406-17, 421-29, 438.  Further, plaintiff was treated by both Dr. Svendsen and Dr. Pugh for complaints of low back pain.  T.  281-82, 435-37, 483, 486-88.

But far from relying upon broad, uncorroborated findings that claimant lacked credibility and could return to her past work, the ALJ identified a number of specific reasons, all finding clear support in the record, to discredit claimant's allegations of disabling pain and other symptoms.  In the first instance, the ALJ was troubled by the general absence of objectively documented signs and laboratory findings tending to suggest pain of disabling degree.  As the ALJ explained, "claimant's clinical examination findings have often been found to be normal or minimally abnormal, . . . and the objective diagnostic evidence of record has been sparse."  T. 24.

In response, plaintiff cites the December 2, 2008, lumbar spine MRI as evidence of serious pathology.  That imaging, however, showed minimal disc dessication at L4-5, no spinal stenosis, and right paracentral disc protrusion at T11-12, which abuts but does not deform the spinal cord surface (and is not in the lumbar levels in any event).  T. 496.  Moreover, the MRI revealed normal lumbar alignment, no compression deformities or subluxations, and no disc protrusions or extrusions in the lumbar levels.  T. 496.  In other words, the MRI results upon which plaintiff places so much reliance do not bespeak a lumbar injury of disabling severity.  Ms. Cardell points to decisions like *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987), and *Cronon v. Barnhart*, 244 F. Supp. 2d 1286 (N.D. Ala. 2003), as profiles with

comparable diagnostic results, but, in truth, the comparisons do not withstand scrutiny. In *Hale*, for instance, the plaintiff adduced diagnostic evidence tending to show that she suffered from cervical nerve root compression syndrome, scoliosis, degenerative disc disease, and cervical spondylosis. *See* 831 F.2d at 1011-12. The claimant in *Cronon* offered similarly dire diagnostic evidence, including x-rays showing severe degenerative changes in the lumbar spine, atrophy, nerve conduction tests, tenderness, pain on palpation, reduced handgrip strength due to carpal tunnel syndrome, and muscle spasms. *See* 244 F. Supp. 2d at 1291. In each case, the court found evidence sufficient to sustain a finding of disability, because, the court concluded, the claimant had produced "objective medical evidence of a condition that [could] reasonably be expected to produce the symptoms of which the claimant complain[ed] . . . ." *See, e.g.*, *Hale*, 831 F.2d at 1011. Fortunately for Ms. Cardell, neither the December 2008 MRI, nor previous or subsequent imaging of her lumbar spine, indicate that she deals with an impairment approximating the severity of those that were so clearly apparent in cases like *Hale* and *Cronon*.[9] Accordingly, the ALJ was not required to accept the MRI as definitive objective medical evidence confirming plaintiff's complaints of disabling musculoskeletal pain.

The ALJ, however, did not stop there. Pursuant to 20 C.F.R. § 404.1529(c)(3)(iv), an ALJ, when evaluating the intensity and persistence of a claimant's symptoms (such as pain), may consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or [has] taken to alleviate

---

[9] For example, imaging performed April 2, 2008, showed only "minor" degenerative changes and no acute compression fractures; the reviewing radiologist characterized the appearance of the lumbar spine as "stable." T. 497, 502. A February 15, 2010, MRI revealed "very minimal disc bulging at L4-5 similar to the prior study of [December] 2008." T. 530.

[her] pain or other symptoms . . . ." *See Jarrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011) (approving ALJ's consideration of this factor).   In compliance with the Regulations and relevant precedent, the ALJ permissibly discounted claimant's credibility in light of her admission that she does not take prescription medication for her allegedly disabling lumbar pain:

> The undersigned finds no evidence of record supporting a conclusion that any of the claimant's severe impairments would be resistant to either alleviation or control with the proper and regular use of the appropriate prescription medications, as well as adherence to conservative treatment measures and modalities, in the event of a flare-up or exacerbation.  The record contains no evidence of the claimant's ongoing difficulties with side effects of medication.

T. 23.  Given the foregoing authorities, it was not unreasonable for the ALJ to infer that a claimant truly debilitated by pain would at least try to alleviate her discomfort by using prescription-strength pain medications, which Dr. Svendsen even prescribed in July 2007; that she has not done so, as the ALJ concluded, supports the conclusion she is not as impaired as alleged.  *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("[R]efusal to follow prescribed medical treatment without a good reason will preclude a finding of disability." (*citing* 20 C.F.R. § 416.930(b))); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.").

The ALJ, as she did here, may also consider a claimant's daily activities in evaluating the intensity and persistence of subjective complaints of pain and other symptoms.  *See Conner v. Astrue*, 415 F. App'x 992, 995 (11th Cir. 2011) ("A claimant's daily activities may be considered in evaluating and discrediting a claimant's subjective complaints."); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th

Cir. 2004) ("[T]he record shows that the ALJ properly considered a variety of factors, including the claimant's use of pain-killers and his daily activities, in making the finding about pain."); 20 C.F.R. § 404.1529(c)(3) (directing the Commissioner to consider various factors relevant to the claimant's symptoms, including "daily activities").  Here, the ALJ concluded that "claimant's ability to engage in a wide array of activities of daily living . . . is persuasive evidence that the claimant's alleged symptoms resulting from physical and/or mental impairments are not totally disabling." T. 23.  In this instance, such activities included caring for her four-year-old son, laundry, yard work, driving, and grocery shopping. T. 31, 36-38. Given, as the ALJ observed, that Ms. Cardell's activities of daily living appear "only mildly impaired," the ALJ permissibly cited this factor in discounting claimant's credibility. T. 23-24.

Similarly, the ALJ reasoned that plaintiff's "performance of work activity," while not always at the level of substantial gainful activity, "is persuasive evidence that the claimant's alleged symptoms . . . are not totally disabling."  T. 23. Significantly, work performed during the time in which a claimant alleges disability may evince an ability to perform substantial gainful activity.  *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (holding that claimant's ability to work for several years in spite of his seizure disorder constituted substantial evidence to support ALJ's decision to discredit examining physician's opinion that claimant was totally disabled); 20 C.F.R. § 404.1571 ("The work . . . that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level.").  That the work at issue here did not always constitute substantial gainful activity, as the ALJ acknowledged, is of little import.

*See id.* ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.").  The ALJ thus permissibly relied upon plaintiff's performance of work activity in issuing a negative credibility finding.

Finally, the ALJ reasoned that "no credible treating or consultative physician has opined that the claimant was disabled because of any physical or mental condition or from any resulting symptoms."  T. 23.  In assessing credibility, an ALJ may consider the absence of credible medical opinion of record that the claimant is so impaired by pain or other symptoms as to be physically or mentally unable to work.  *See Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984) (upholding ALJ's credibility finding and noting that "[n]o doctor . . . opined that [claimant] is disabled within the purview of the Act because of pain").  As the ALJ recognized implicitly, such medical opinion as might even suggest disability due to pain is conspicuous only in its absence from the instant matter.  Simply put, it was not inappropriate for the ALJ to consider this factor in reaching a determination on Ms. Cardell's credibility.

In sum, plaintiff has not shown either that the ALJ strayed from the Regulations or Eleventh Circuit precedent in rendering the credibility finding at issue, or that the finding itself is not supported by substantial evidence.  The foregoing analysis has delved thoroughly into the evidentiary reasons offered to discredit claimant's allegations of disabling pain, symptoms, and loss of functional capacity, and those reasons, as set forth here and in the administrative decision, are compelling.  More importantly, the ALJ articulated those reasons undergirding the credibility determination with clarity and cogency, none more persuasively than the relative lack of objective medical evidence to support the complaints of pain of disabling severity.

Plaintiff may, in fact, be unable to work without some pain or discomfort, but this, standing alone, is not sufficient to satisfy the decidedly narrow definition of disability under the Social Security Act.  *See Arnold*, 732 F.2d at 884.  Because the challenged credibility finding is clearly articulated and supported by substantial evidence, the decision of the Commissioner must be upheld.  *See Conner*, 415 F. App'x at 996 ("A reviewing court will not disturb a clearly articulated credibility finding without substantial supporting evidence in the record.").

It is therefore respectfully RECOMMENDED:

The applications for disability insurance benefits and supplemental security income be DENIED and the Commissioner's decision be AFFIRMED.

At Pensacola, Florida, this 23rd day of May, 2012.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).